# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

IN RE SCOTT LEWIS RENDELMAN,
*Movant*.

On Appeal from the United States District Court
for the District of Maryland at Greenbelt,
No. 8:07-cr-00331-JKB-1, Hon. James K. Bredar

## MOVANT'S OPENING BRIEF
## IN SUPPORT OF MOTION FOR AUTHORIZATION
## PURSUANT TO 28 U.S.C. § 2255(h)(2)

Caroline A. Schechinger
KELLOGG, HANSEN, TODD,
  FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
cschechinger@kellogghansen.com

*Appointed Counsel for Scott L.
Rendelman*

March 28, 2024

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................iv

INTRODUCTION .............................................................................................1

STATEMENT OF JURISDICTION..................................................................2

STATEMENT OF THE ISSUE.........................................................................2

STATEMENT OF THE CASE...........................................................................2

I.    Factual Background ................................................................................2

II.    Procedural Background ..........................................................................4

    A.    Indictment, Trial, And Sentencing .......................................4

    B.    Direct Appeal ........................................................................7

    C.    Previous 28 U.S.C. § 2255 Proceedings ...............................8

    D.    Current Application for Leave to File a Successive Motion Under 28 U.S.C. § 2255(h)(2)................................................8

SUMMARY OF ARGUMENT .........................................................................9

STANDARD FOR GRANTING A SUCCESSIVE 28 U.S.C. § 2255 MOTION ......................................................................................................10

ARGUMENT .................................................................................................10

I.    Mr. Rendelman's Motion For Authorization To File A Successive Motion Under 28 U.S.C. § 2255 Should Be Granted In Light Of *Counterman* ......................................................................................10

    A.    *Counterman* Requires Proof Of Subjective Intent In True-Threats Cases Like This One ............................................11

    B.    *Counterman* Announced A New, First Amendment Rule That Was Previously Unavailable ............................................12

    C.    *Counterman* Applies Retroactively To Cases On Collateral Review ...................................................................................... 14

II.    The Jury Instructions Given At Mr. Rendelman's Trial Violated The First Amendment ............................................................................. 16

CONCLUSION ..................................................................................... 17

REQUEST FOR ORAL ARGUMENT .................................................. 17

CERTIFICATE OF COMPLIANCE ...................................................... 18

CERTIFICATE OF SERVICE .............................................................. 19

# TABLE OF AUTHORITIES

**Page**

## CASES

*Counterman v. Colorado*,
600 U.S. 66 (2023)................................................. 1, 2, 9, 10, 11, 12, 13, 16

*Graham, In re*,
61 F.4th 433 (4th Cir. 2023) ..................................... 10, 13, 14, 15

*Hubbard, In re*,
825 F.3d 225 (4th Cir. 2016) ............................................... 15, 16

*Marlowe v. Warden, FCI Hazelton*,
6 F.4th 562 (4th Cir. 2021) .....................................................10

*Maryland v. Rendelman*,
947 A.2d 546 (Md. 2008) .................................................3

*Rendelman v. Maryland*,
175 Md. App. 422 (Md. Ct. Spec. App. 2007)...............................3

*Schriro v. Summerlin*,
542 U.S. 348 (2004)........................................................ 14, 17

*Teague v. Lane*,
489 U.S. 288 (1989).............................................................12

*Thomas, In re*,
988 F.3d 783 (4th Cir. 2021) ..................................... 12, 14, 15, 16

*Tyler v. Cain*,
533 U.S. 656 (2001)............................................................14

*United States v. Chatman*,
584 F.2d 1358 (4th Cir. 1978) ...........................................13

*United States v. Darby*,
37 F.3d 1059 (4th Cir. 1994) .......................................13

*United States v. Maxton*,
    940 F.2d 103 (4th Cir. 1991) ...........................................................13

*United States v. Waters*,
    64 F.4th 199 (4th Cir. 2023) ................................................. 14, 15

*United States v. Worrell*,
    313 F.3d 867 (4th Cir. 2002) ........................................... 5, 12, 13

*United States v. Rendelman*,
    641 F.3d 36 (4th Cir. 2011) ......................................................7, 8

## CONSTITUTION

U.S. Const. amend. I ..................................................... 1, 2, 9, 11, 12, 16

## STATUTES

18 U.S.C. § 875 ...........................................................................13

18 U.S.C. § 876 ...........................................................................13

18 U.S.C. § 876(c) ................................................................ 1, 4, 5, 6

28 U.S.C. § 2244(b)(3) ................................................................1, 2

28 U.S.C. § 2255 .................................................... 1, 2, 8, 10, 13, 17

28 U.S.C. § 2255(h)(2) ............................... 1, 2, 8, 10, 12, 13, 14, 15, 16, 17

## OTHER AUTHORITY

Order, *Rendelman v. United States*, No. 23-2896
    (7th Cir. Oct. 24, 2023), ECF No. 2 ............................................15

# INTRODUCTION

This case involves an important question regarding the effect of *Counterman v. Colorado*, 600 U.S. 66 (2023), on successive collateral attacks to a defendant's conviction. In *Counterman*, the Supreme Court held that the First Amendment prohibits convicting someone for threats of violence unless there is proof beyond a reasonable doubt that the speaker "had some subjective understanding of the threatening nature of his statements." *Id.* at 69. Before *Counterman*, this Circuit and others upheld convictions based on jury findings that a reasonable person would have taken the speaker's statements as threats, regardless of the speaker's subjective intent. After *Counterman*, statements not intended as threats are not crimes.

In 2007, Mr. Scott Lewis Rendelman was convicted of violating a federal threats statute, 18 U.S.C. § 876(c). The jury instructions did not require the prosecution to prove Mr. Rendelman intended his statements as threats. The jury could thus find him guilty for conduct that the Supreme Court has now held lawful. Mr. Rendelman now seeks authorization from this Court to bring a successive 28 U.S.C. § 2255 motion based on *Counterman*. *See* 28 U.S.C. §§ 2244(b)(3), 2255(h)(2). The Court should grant that authorization because *Counterman* announced a new, retroactive rule of constitutional law that was previously unavailable to him.

## STATEMENT OF JURISDICTION

This Court has jurisdiction under 28 U.S.C. §§ 2244(b)(3) and 2255(h)(2) to hear this motion for an order authorizing the district court to consider a successive 28 U.S.C. § 2255 motion.

## STATEMENT OF THE ISSUE

Whether *Counterman v. Colorado*, 600 U.S. 66 (2023), which applied the First Amendment to hold that a threat is not a crime unless the speaker had a culpable mental state, announced a new, retroactive rule of constitutional law.

## STATEMENT OF THE CASE

### I.    Factual Background

In 1986, Mr. Rendelman, then 31 years old, began serving an eighteen-month sentence for embezzling money from his employer. JA33, JA166. He was supposed to be released on parole after four and a half months. JA33, JA166. Less than two months into his sentence, Mr. Rendelman was raped by his cellmate. JA167. This triggered the first of many letters Mr. Rendelman wrote from prison to his former employer, various judges, prison officials, and others. JA106-108, JA167-168. Mr. Rendelman wrote letters saying he would injure or kill the recipients as a form of "protest," believing that the prison and legal system had failed to rehabilitate him, instead "putting him in rape situations." JA37, JA168. While incarcerated, Mr. Rendelman was raped four more times and brutally beaten on other occasions. JA124, JA167-168.

Because of Mr. Rendelman's compulsive letter-writing, he remained in prison long after his sentence for his 1986 embezzlement conviction. It was not until 2001 that Mr. Rendelman left prison on supervised release. JA107-108. During three years of supervised release, Mr. Rendelman found a steady job, paid taxes, and got engaged. JA19. He did not write any threatening letters during that time. JA19, JA111-112. He has never committed any acts of physical violence (in or outside of prison). JA109-110, JA112.

After his supervised release ended, Mr. Rendelman wrote letters to his former employer threatening to sue for money he thought his former employer owed him. JA19; *Rendelman v. Maryland*, 175 Md. App. 422, 425 (Md. Ct. Spec. App. 2007), *aff'd*, 947 A.2d 546 (Md. 2008). He was sentenced to ten years in prison for writing one of those letters, this time on a state-law extortion conviction. JA21, JA108; *Rendelman*, 175 Md. App. at 425 & n.1. The state courts overturned that conviction; before they did, Mr. Rendelman went back to writing letters. *See* JA21-22; *Maryland v. Rendelman*, 947 A.2d 546, 559 (Md. 2008) ("[Mr. Rendelman's] only action was to threaten [his former employer] with civil litigation . . . a threat of litigation is not an unlawful act that would support a conviction for the crime of extortion.").

In a non-threatening letter Mr. Rendelman wrote to the federal district judge who ordered his supervised release, he explained his conduct as follows:

I felt the need to write to you because it is <u>very important</u> to me that you understand that <u>I did not let you down</u>. . . . After my supervision ended on December 21, 2004 and it became perfectly legal for me to contact [Mr. Rendelman's former employer], . . . [m]y <u>only</u> threat was the threat of legal action, which as far as I knew was perfectly legal to threaten. . . . [H]ere I am, back in prison, the place I promised myself I would never come again, and yes, I'm back to writing threatening letters. Because in 2001 I had <u>also</u> promised you that if I was returned to prison the threatening letters would continue. I had explained to you, and I was certain you understood, that I write the letters as my way of demonstrating to the officials that this is not the way you treat someone if you are trying to achieve a positive result.

JA18-19, JA21-22.

## II.    Procedural Background

### A.    Indictment, Trial, And Sentencing

On July 25, 2007, a multi-count indictment charged Mr. Rendelman with mailing threatening communications in violation of 18 U.S.C. § 876(c). JA16-17. The charges stemmed from letters Mr. Rendelman wrote in 2005 and 2006 while incarcerated on the erroneous extortion conviction. JA16-17. He addressed these letters to the President of the United States and three individuals (the prosecutor, the judge, and his former employer's lawyer) involved in the extortion prosecution. JA16-17. Mr. Rendelman believed that the recipients were familiar with his history of writing letters as a form of "protest" against the system that had convicted and jailed him, and so would understand that he did not intend the letters to be true threats. JA37.

Mr. Rendelman's case proceeded to trial in December 2007. JA23, JA39, JA45, JA85. He represented himself, with some assistance from standby counsel. *E.g.*, JA26-29. From the outset, Mr. Rendelman made clear (through standby counsel) that he wanted to pursue the defense that his letters were not "true threats," but "protest[s]" that were not punishable under § 876(c). JA26-29. The prosecution opposed, arguing that "whether or not [Mr. Rendelman] intended to make a threat" was "entirely irrelevant" under then-binding law. JA27-28 (citing, *e.g.*, *United States v. Worrell*, 313 F.3d 867 (4th Cir. 2002)). The district court agreed: "It is not what is in Mr. Rendelman's mind that is relevant. It's . . . what a reasonable person receiving that communication would believe it to be, and that's how I intend to instruct the jury on the question." JA29; *see also* JA43 (instructing Mr. Rendelman on side bar: "The question . . . is what would a reasonable person receiving this communication take it to be, not what you intended it to be . . . . ").

After the prosecution rested its case-in-chief, Mr. Rendelman moved to dismiss the indictment, arguing (among other things) that the prosecution had failed to present any evidence that the alleged threats were "true threats." JA48. The district court denied the motion, explaining: "It could very well be that a person actually didn't perceive something as a threat, but the question is whether the jury believes that a reasonable person did." JA50; *see also* JA49 (prosecution's argument that "the law does not require us to prove that Mr. Rendelman . . . even intended to

threaten [the recipients of his letters] per se"). Following the district court's explanation, Mr. Rendelman rescinded his decision to testify in his own defense. JA50-52.

At the close of evidence, the district court instructed the jury that a conviction under § 876(c) required proof beyond a reasonable doubt that Mr. Rendelman "threatened to kidnap or to injure the named victims as charged in the indictment." JA76-77. The court further instructed the jury to consider solely how a "reasonable person" would understand Mr. Rendelman's statements, explaining:

> A threat is a serious statement expressing an intent to inflict injury at once or in the future, as distinguished from idle or careless talk, exaggeration, or something said in a joking manner. A statement is a threat if it was made under such circumstances that a reasonable person hearing or reading the statement would understand it as a serious expression of intent to inflict injury.

JA77.

The prosecution's closing argument repeatedly emphasized that the jury did not need to find that Mr. Rendelman had a culpable state of mind to convict. *See* JA88-90, JA92, JA96. It stressed that the law required proof only of what a "reasonable person" would believe and not any proof as to "even whether [Mr. Rendelman] intended [his letters] to be a threat." JA88. Applying this law, the jury found Mr. Rendelman guilty on all counts. JA157.

The district court held a sentencing hearing on April 21, 2008. JA98-156.

Mr. Rendelman's counsel asked the court to impose a lower sentence, citing psychological evaluations showing that he is a non-dangerous individual who suffers from a mental illness that locks him into a "vicious cycle" of making "empty, hollow threats." *See* JA109-114, JA145-146. Counsel stated: "I am amazed, Your Honor . . . given the history that Mr. Rendelman has presented in the past 20 years, why prison officials have not thought to take away his pen and paper and screen his mail, because he cannot stop. He needs help." JA146. Addressing the court, Mr. Rendelman confirmed that he would continue writing "letters that you must know by now are not really threatening anything real" as long as he was in prison, remarking:

> I write these letters when I'm locked up because I have to. If I didn't, you would think your system of mistreatment and abuse works, and if I remain incarcerated I will continue to write them because I have to. . . . The statement I've worked so hard to make is this, that the government took someone who was no threat to anyone and after beating him, raping him, destroying his life, hurting everyone he loved and subjecting him to your correctional programming, your end result is the unacceptable behavior which he had never done before.

JA132, JA135, JA138.

The district court sentenced Mr. Rendelman to fifteen years in prison and recommended that prison officials screen his mail going forward. JA152-155.

### B. Direct Appeal

On April 22, 2008, Mr. Rendelman filed a notice of appeal challenging his convictions on two counts. JA163; *see United States v. Rendelman*, 641 F.3d 36, 38

(4th Cir. 2011).  On April 8, 2011, this Court denied Mr. Rendelman's appeal and affirmed his convictions.  *Rendelman*, 641 F.3d at 49.

### C.    Previous 28 U.S.C. § 2255 Proceedings

On March 19, 2012, Mr. Rendelman, representing himself, filed his first motion under 28 U.S.C. § 2255.  *See* JA165, 173-174.  He sought to vacate, set aside, or correct his sentence on the basis that he received ineffective assistance of counsel at sentencing and on direct appeal.  JA173-174.  The district court dismissed the motion on January 9, 2013.  JA172-190.

### D.    Current Application for Leave to File a Successive Motion Under 28 U.S.C. § 2255(h)(2)

On September 12, 2023, Mr. Rendelman moved *pro se* for authorization to file a successive § 2255 petition based on *Counterman*.  ECF Nos. 2-1, 2-2.  He argued that he had been "unconstitutionally prevented from . . . arguing[] and introducing evidence to prove[] his lack of subjective intent to make true threats against the recipients of his letters."  ECF No. 2-2 at 5 (asserting that Mr. Rendelman's "only intent was to show that the prison homosexual rape and abuse rehabilitation program failed in its mission to stop [Mr.] Rendelman's letter writing").

On November 21, 2023, the Court appointed counsel to represent Mr. Rendelman on appeal, directing counsel to address the issue whether

*Counterman v. Colorado*, 600 U.S. 66 (2023), stated a new rule of constitutional law that applies retroactively to cases on collateral review. ECF Nos. 9, 10-1.

## SUMMARY OF ARGUMENT

**I.** Mr. Rendelman satisfies the requirements to bring a successive collateral attack on his conviction. *Counterman* announced in 2023 a new First Amendment rule requiring proof of a defendant's mental state in true-threats prosecutions that was unavailable to Mr. Rendelman when he brought his first collateral challenge in 2012. *Counterman*'s rule is substantive because it makes innocent conduct that was previously thought to be criminal – and therefore applies retroactively to cases on collateral review.

**II.** Under *Counterman*, the jury instructions given at Mr. Rendelman's trial violated the First Amendment. The district court instructed the jury to find Mr. Rendelman guilty if a "reasonable person" reading his letters would perceive them to be threatening violence. As the prosecution emphasized during closing arguments, Mr. Rendelman's subjective intent was irrelevant under those instructions. Mr. Rendelman was therefore convicted on the basis of instructions that allowed the jury to find him guilty of conduct that in light of *Counterman* is not and never was a crime. Section 2255(h) exists to allow for the correction of foundational errors like this one.

Mr. Rendelman's motion to file a successive § 2255 petition in district court should be granted.

## STANDARD FOR GRANTING A SUCCESSIVE 28 U.S.C. § 2255 MOTION

Mr. Rendelman's motion should be granted if he "'mak[es] a prima facie showing that' his claim satisfies the [28 U.S.C.] § 2255(h) gatekeeping test." *In re Graham*, 61 F.4th 433, 442 (4th Cir. 2023) (quoting *Marlowe v. Warden, FCI Hazelton*, 6 F.4th 562, 568 (4th Cir. 2021)). That test is satisfied where the § 2255 motion he plans to file contains "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h)(2). A possibility of success on the merits is not part of the prima facie showing § 2255(h)(2) requires. *Graham*, 61 F.4th at 442 & n.4. That is, Mr. Rendelman need not show a "possibility that [his] claim[] will ultimately warrant a decision in [his] favor," only a "possibility that [his] claim[] . . . will satisfy the stringent requirements for the filing of a second or successive petition." *Id*.

## ARGUMENT

### I. Mr. Rendelman's Motion For Authorization To File A Successive Motion Under 28 U.S.C. § 2255 Should Be Granted In Light Of *Counterman*

Mr. Rendelman squarely satisfies the gatekeeping requirements of § 2255(h)(2) because *Counterman v. Colorado*, 600 U.S. 66 (2023), announced a new and retroactive rule of constitutional law that was previously unavailable to him.

Accordingly, he should be allowed to proceed in district court on the theory that he was convicted based on instructions that permitted the jury to find him guilty for conduct that is protected by the First Amendment.

### A. *Counterman* Requires Proof Of Subjective Intent In True-Threats Cases Like This One

In *Counterman*, the Supreme Court held that in "true-threats cases," the First Amendment requires the government to prove "that the defendant was aware in some way of the threatening nature of his communications." 600 U.S. at 72-73. As the Supreme Court explained, "'[t]rue threats' of violence" – statements "convey[ing] a real possibility that violence will follow" – are a "historically unprotected category of communications." *Id.* at 74. But to make all "true threats" punishable as crimes would have a "chilling effect" on historically protected speech. *Id.* at 75. The Supreme Court held that requiring the government to prove a "culpable mental state" gives appropriate weight to First Amendment freedoms, even though this burden "will shield some otherwise proscribable (here, threatening) speech because the [government] cannot prove what the defendant thought." *Id.*

Following *Counterman*, in every true-threats case, the prosecution must prove beyond a reasonable doubt both an objective threat (i.e., a statement that a reasonable person would understand as a threat), and a subjective intent to threaten (i.e., the defendant was "aware[] . . . that the statements could be understood that way"). *Id.* at 69, 82. To establish that subjective intent, the prosecution must at least prove a

"mental state of recklessness," meaning that the defendant was aware "that others could regard his statements as threatening violence and deliver[ed] them anyway." *Id.* at 69, 79 (internal quotation marks omitted).

## B. *Counterman* Announced A New, First Amendment Rule That Was Previously Unavailable

*Counterman* announced a "new rule of constitutional law." 28 U.S.C. § 2255(h)(2). As set forth above, that case held that the "First Amendment . . . requires proof that the defendant had some subjective understanding of the threatening nature of his statements." *Counterman*, 600 U.S. at 69, 72. *Counterman*'s constitutional rule is "new" because it "was not *dictated* by precedent existing at the time [Mr. Rendelman's] conviction became final." *In re Thomas*, 988 F.3d 783, 788 (4th Cir. 2021) (quoting *Teague v. Lane*, 489 U.S. 288, 301 (1989) (plurality opinion)). When the Supreme Court decided *Counterman*, courts were "divided about (1) whether the First Amendment requires proof of a defendant's subjective mindset in true-threats cases, and (2) if so, what *mens rea* standard is sufficient." *Counterman*, 600 U.S. at 72.

Before *Counterman*, this Circuit had ruled that the First Amendment did not require proof of any subjective mindset. A long line of cases held that "[a] 'true threat' is determined not by the defendant's subjective mindset, but by the objective standard of whether a 'reasonable recipient who is familiar with the context of the [defendant's statement] would interpret it as a threat of injury.'" *United States v.*

*Worrell*, 313 F.3d 867, 874 (4th Cir. 2002) (quoting *United States v. Maxton*, 940 F.2d 103, 106 (4th Cir. 1991)) (applying § 876); *see, e.g., United States v. Darby*, 37 F.3d 1059, 1066 (4th Cir. 1994) ("The government does not have to prove that the defendant subjectively intended for the recipient to understand the communication as a threat.") (applying § 875); *United States v. Chatman*, 584 F.2d 1358, 1361 (4th Cir. 1978) ("The only proof of specific intent required to support a conviction under 18 U.S.C. § 876 is that the defendant knowingly deposits a threatening letter in the mails, not that he intended or was able to carry out the threat."). *Counterman* changed that landscape by making clear that "a subjective mental-state requirement" is a constitutional element of a true-threats crime. 600 U.S. at 75.

Further, *Counterman*'s rule "was previously unavailable" to Mr. Rendelman within the meaning of 28 U.S.C. § 2255(h)(2). A rule "was previously unavailable" under that statute "if it was not available to the petitioner when he brought his last federal proceeding . . . challenging his conviction." *In re Graham*, 61 F.4th 433, 442 (4th Cir. 2023) (internal quotation marks omitted). Mr. Rendelman brought his last federal proceeding challenging his conviction – his first § 2255 motion – in March 2012, more than a decade before *Counterman*. JA165. His application therefore satisfies the first two gatekeeping requirements. *See Graham*, 61 F.4th at 442-43

(constitutional rule was "new" and "previously unavailable"); *Thomas*, 988 F.3d at 788-89 (same).

### C. *Counterman* Applies Retroactively To Cases On Collateral Review

Mr. Rendelman also satisfies the final gatekeeping requirement that the Supreme Court "made" the rule "retroactive to cases on collateral review." 28 U.S.C. § 2255(h)(2). That Court has instructed that "[n]ew *substantive* rules" – those that "alter[] the range of conduct or the class of persons that the law punishes" – "generally apply retroactively." *Schriro v. Summerlin*, 542 U.S. 348, 351-53 (2004). "[R]etroactive application of substantive rules is justified because 'they necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal or faces a punishment that the law cannot impose upon him.'" *United States v. Waters*, 64 F.4th 199, 203 (4th Cir. 2023) (quoting *Schriro*, 542 U.S. at 352).

*Counterman*'s rule is substantive under that rubric. The Supreme Court, by holding that subjective intent is a required element of a true-threats crime, placed conduct that previously was punished "beyond the power of the criminal law-making authority to proscribe." *Tyler v. Cain*, 533 U.S. 656, 669 (2001) (O'Connor, J., concurring). "[I]t necessarily follows that [the Supreme] Court has 'made' that new rule retroactive." *Id.*; *see Graham*, 61 F.4th at 442 (granting movant's § 2255(h)(2) authorization motion in light of new, substantive constitutional rule); *Thomas*,

988 F.3d at 789 (same); *see also Waters*, 64 F.4th at 203 (giving retroactive effect to a Supreme Court decision recognizing an additional *mens rea* requirement for a firearms-possession offense).

The Seventh Circuit recently reached the same conclusion when ruling on a separate § 2255(h)(2) application filed by Mr. Rendelman that also relies on *Counterman*. *See* Order, *Rendelman v. United States*, No. 23-2896 (7th Cir. Oct. 24, 2023), ECF No. 2. That court granted the application on the basis that "*Counterman* appears to announce a new First Amendment rule" that is "substantive and, therefore, retroactive to cases on collateral review." *Id.* at 2.

Because Mr. Rendelman has amply satisfied the "relatively low bar" to make out a prima facie showing under § 2255(h)(2), the Court should grant Mr. Rendelman's motion and allow him to seek a new trial before a properly instructed jury. *See*, *e.g.*, *In re Hubbard*, 825 F.3d 225, 231 (4th Cir. 2016). The district court should decide in the first instance how *Counterman*'s recognition of a subjective-intent element "affect[s] his case" in light of evidence the prosecution did not adduce, and evidence that Mr. Rendelman was barred from introducing, at trial. *See id.* (emphasizing that, at the authorization stage, "it is for the district court to determine whether the new rule extends to the movant's case, not for this court in this proceeding"); *Graham*, 61 F.4th at 442 & n.4 (a possibility of success on the merits is not a § 2255(h)(2) gatekeeping requirement).

## II. The Jury Instructions Given At Mr. Rendelman's Trial Violated The First Amendment

Even taking a "cursory glance" at the merits, Mr. Rendelman "has stated a plausible claim for relief that warrants further exploration by the district court." *See Thomas*, 988 F.3d at 790-92 (§ 2255(h)(2) gatekeeping test "'may entail a cursory glance at the merits' but 'the focus of the inquiry must always remain on' the authorizing standards") (quoting *Hubbard*, 825 F.3d at 231). Mr. Rendelman's jury was instructed on only one of the two constitutionally required elements of a true-threats crime. The district court instructed the jury to convict Mr. Rendelman if he made statements "under such circumstances that a reasonable person hearing or reading the statement would understand it as a serious expression of intent to inflict injury." JA77. The district court did not instruct the jury – as *Counterman* requires – that it could not convict Mr. Rendelman without also finding that he was "aware of the threatening nature of his statements." 600 U.S. at 71-72. That was the error the Supreme Court corrected in *Counterman* by rejecting an exclusively "objective" standard that focuses only on what is "convey[ed]" to the recipient. *Id.* at 72, 74.

Because the district court did not have the benefit of *Counterman*, the jury was permitted to find Mr. Rendelman guilty of conduct the Supreme Court has now made clear is not criminal. That conviction should not stand. Mr. Rendelman should receive a new jury trial to determine, on a full record that includes evidence of his mental state, whether there is reasonable doubt that he subjectively intended to make

a threat.  The § 2255(h)(2) escape hatch is designed for fundamental errors like this one, which go to the heart of the government's "power to punish."  *See Schriro*, 542 U.S. at 351-52.

## CONCLUSION

The Court should grant Mr. Rendelman's application and allow him to file a successive § 2255 motion predicated on *Counterman*.

## REQUEST FOR ORAL ARGUMENT

The Court appointed counsel to present argument on Mr. Rendelman's behalf. Given that the question presented is one of first impression in this Circuit, oral argument would assist the Court's consideration.

March 28, 2024

Respectfully submitted,

*/s/ Caroline A. Schechinger*
Caroline A. Schechinger
KELLOGG, HANSEN, TODD,
  FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
cschechinger@kellogghansen.com

*Appointed Counsel for Scott L. Rendelman*

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 23-257          Caption: In re Scott Lewis Rendelman

### CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

**Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[✓] this brief or other document contains _____3,899_____ [*state number of*] words

[ ] this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

[✓] this brief or other document has been prepared in a proportionally spaced typeface using
Microsoft Word, 2016 _____ [*identify word processing program*] in
14-point, Times New Roman _____ [*identify font size and type style*]; **or**

[ ] this brief or other document has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font size and type style*].

(s) Caroline A. Schechinger _____

Party Name Scott L. Rendelman _____

Dated: March 28, 2024 _____

**CERTIFICATE OF SERVICE**

I hereby certify that, on March 28, 2024, I electronically filed the foregoing Opening Brief with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

/s/ Caroline A. Schechinger
Caroline A. Schechinger