No. 23-257

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

IN RE SCOTT LEWIS RENDELMAN,
*Movant*.

On Appeal from the United States District Court
for the District of Maryland at Greenbelt,
No. 8:07-cr-00331-JKB-1, Hon. James K. Bredar

## MOVANT'S REPLY BRIEF
## IN SUPPORT OF MOTION FOR AUTHORIZATION
## PURSUANT TO 28 U.S.C. § 2255(h)(2)

Caroline A. Schechinger
KELLOGG, HANSEN, TODD,
 FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
cschechinger@kellogghansen.com

June 17, 2024

*Appointed Counsel for Scott L. Rendelman*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................. iii

INTRODUCTION ................................................................................................1

ARGUMENT .......................................................................................................3

I. Mr. Rendelman Is Entitled To File A Successive 28 U.S.C. § 2255 Motion...................................................................................................3

    A. The Government Concedes That In Light Of *Counterman* Mr. Rendelman Satisfies The Gatekeeping Requirements Congress Specified ...................................................................3

    B. The Court Should Reject The Government's Attempt To Create A New Gatekeeping Requirement Which Would Require The Court to Pre-Judge The Factual Merits Of Mr. Rendelman's Case ..........................................................................................4

II. Glancing At The Merits Confirms That Mr. Rendelman's Authorization Motion Should Be Granted...............................................................11

CONCLUSION ................................................................................................13

CERTIFICATE OF COMPLIANCE .................................................................15

CERTIFICATE OF SERVICE ..........................................................................16

# TABLE OF AUTHORITIES

Page

**CASES**

*Bennett v. United States*,
    119 F.3d 468 (7th Cir. 1997) ................................................................5, 6

*Brecht v. Abrahamson*,
    507 U.S. 619 (1993) ..............................................................................4

*Calderon v. Coleman*,
    525 U.S. 141 (1998) ..............................................................................4

*Counterman v. Colorado*,
    600 U.S. 66 (2023) ......................................................................... 2, 13

*Crandell, In re*,
    725 F. App'x 237 (4th Cir. 2018) ..........................................................6

*Davis v. Ayala*,
    576 U.S. 257 (2015) ............................................................................. 4

*Graham, In re*,
    61 F.4th 433 (4th Cir. 2023) ...............................................................2, 6

*Hubbard, In re*,
    825 F.3d 225 (4th Cir. 2016) ................................................. 2, 6, 8, 9, 10, 11

*Irby, In re*,
    858 F.3d 231 (4th Cir. 2017) ................................................................9

*Johnson v. United States*,
    576 U.S. 591 (2015) ...........................................................................8, 9

*Ochoa v. Sirmons*,
    485 F.3d 538 (10th Cir. 2007) ............................................................ 7, 11

*Russello v. United States*,
    464 U.S. 16 (1983) ..............................................................................11

*Stewart, In re*,
　　78 F.4th 690 (4th Cir. 2023) ............................................................................10

*Thomas, In re*,
　　988 F.3d 783 (4th Cir. 2021) ............................................................... 8, 11, 12

*United States v. McNeal*,
　　818 F.3d 141 (4th Cir. 2016) ..............................................................................9

*United States v. Peppers*,
　　899 F.3d 211 (3d Cir. 2018) ...............................................................................7

*United States v. Said*,
　　26 F.4th 653 (4th Cir. 2022) ..........................................................................4, 5

*United States v. Winston*,
　　850 F.3d 677 (4th Cir. 2017) ..............................................................................6

*University of Tex. Sw. Med. Ctr. v. Nassar*,
　　570 U.S. 338 (2013)..........................................................................................11

*Vassell, In re*,
　　751 F.3d 267 (4th Cir. 2014) ..............................................................................8

*Williams, In re*,
　　759 F.3d 66 (D.C. Cir. 2014).............................................................................7

*Williams, In re*,
　　330 F.3d 277 (4th Cir. 2003) ..............................................................................5

**CONSTITUTION**

U.S. Const. amend. I .................................................................................................3

**STATUTES**

28 U.S.C. § 2244................................................................................... 4, 5, 7, 10

28 U.S.C. § 2255..................................................................................... 1, 3, 6, 10

# INTRODUCTION

At his 2007 trial, Mr. Scott Rendelman sought to defend against federal charges that he mailed letters from prison threatening violence on the ground that he did not intend to make a threat. Mr. Rendelman, who suffers from a mental illness, instead sent those letters as a form of protest against the prison and legal system that he believed had failed him. The district court, however, prevented Mr. Rendelman from presenting that defense because his subjective intent was irrelevant under then-applicable law. In returning a guilty verdict, the jury followed instructions that did not require the government to prove that Mr. Rendelman intended his statements as threats.

In 2023, the law changed. The Supreme Court held in *Counterman* that statements not intended as threats are not crimes. Relying on *Counterman*'s new rule, Mr. Rendelman seeks this Court's permission to file a successive collateral attack on his conviction under 28 U.S.C. § 2255(h)(2). This Court should allow Mr. Rendelman to do so because it is undisputed that his claim satisfies the gatekeeping requirements Congress specified. *See* Gov't Br. 2, 3, 9, 16 (conceding that "[Mr.] Rendelman passes through the relevant gatekeeping test"). All agree that *Counterman*'s recognition of a subjective-intent element is a "new rule of constitutional law" "previously unavailable" to Mr. Rendelman that the Supreme Court "made retroactive to cases on collateral review." 28 U.S.C. § 2255(h)(2).

The government erroneously opposes Mr. Rendelman's motion (at 18-19) on the basis that the *Counterman* error did not have a "substantial and injurious" effect on his trial. The "substantial and injurious" effect standard applies on collateral review, not at the gatekeeping stage. The government fails to cite a single case applying that fact-intensive prejudice standard to authorization motions, which Congress directed courts to decide on an expedited basis and using fixed criteria. As this Court's cases make clear, at this stage Mr. Rendelman need not show a "possibility that [his] claim[] will ultimately warrant a decision in [his] favor," only a "possibility that [his] claim[] . . . will satisfy the stringent requirements for the filing of a second or successive petition." *In re Graham*, 61 F.4th 433, 442 & n.4 (4th Cir. 2023); *see In re Hubbard*, 825 F.3d 225, 231 (4th Cir. 2016). Mr. Rendelman clears the gate because his claim indisputably satisfies those requirements.

The government's concession that *Counterman* applies to Mr. Rendelman's case confirms that his claim warrants further exploration by the district court. The government admits that Mr. Rendelman should have received "a jury instruction which said, at the least, the government must prove that he 'consciously disregarded a substantial risk that his communications would be viewed as threatening violence.'" Gov't Br. 19 (quoting *Counterman v. Colorado*, 600 U.S. 66, 69 (2023)). Although the government disputes (at 19-22) whether a *Counterman*

2

instruction would have made a difference in Mr. Rendelman's case, that is a dispute Congress directed the district court to resolve in the first instance. In any case, contrary to the government's contention (at 19), it is not "clear[]" at all that the prosecution met its burden to prove Mr. Rendelman's mental state beyond a reasonable doubt. The government's position (at 20) that "the threats in the letters speak for themselves" would denude *Counterman* of all force.

## ARGUMENT

### I. Mr. Rendelman Is Entitled To File A Successive 28 U.S.C. § 2255 Motion

#### A. The Government Concedes That In Light Of *Counterman* Mr. Rendelman Satisfies The Gatekeeping Requirements Congress Specified

The government concedes (at 14) that *Counterman*'s holding that the prosecution must prove not only an objective threat but also a subjective intent to threaten is a "new" rule that was previously unavailable to Mr. Rendelman. The government also concedes (at 15-16) that this rule is constitutional, rather than statutory, because it is grounded in the First Amendment. And it concedes (at 16) that the rule applies retroactively to cases on collateral review because it immunizes conduct – making an objectively threatening statement that the speaker does not intend as a threat – from being punished as a crime.

Given the government's concessions, there is no question that Mr. Rendelman's motion satisfies the gatekeeping requirements Congress specified. *See* 28 U.S.C. § 2255(h)(2) ("A second or successive motion must be certified as

3

provided in section 2244 by a panel of the appropriate court of appeals to contain[] . . . a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable."). This Court, therefore, should allow Mr. Rendelman to assert his *Counterman* claim in district court based on his "prima facie showing that [his] application satisfies the requirements" to pass through the gate. *See id.* § 2244(b)(3)(C).

> **B.** **The Court Should Reject The Government's Attempt To Create A New Gatekeeping Requirement Which Would Require The Court to Pre-Judge The Factual Merits Of Mr. Rendelman's Case**

The government opposes (at 3, 16-22) Mr. Rendelman's authorization motion on the basis that he does not present a "'plausible' claim to relief based on the facts of his case." In doing so, the government asks this Court to go beyond the statutory gatekeeping requirements – which it concedes are satisfied here – and determine whether the instructional error "had substantial and injurious effect or influence in determining the jury's verdict." Gov't Br. 18 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)).

The prejudice inquiry the government urges is premature. As the government acknowledges, *Brecht* and the other cases the government relies upon were "considering a constitutional error on collateral review." *Id.*; *see Brecht*, 507 U.S. at 637-38; *Davis v. Ayala*, 576 U.S. 257, 267-68 (2015); *Calderon v. Coleman*, 525 U.S. 141, 145-46 (1998) (per curiam); *United States v. Said*, 26 F.4th 653, 660-

61 (4th Cir. 2022). Those cases do not address the separate, gatekeeping test that determines *whether* a defendant can press a claim on collateral review. As just described, Congress set forth the gatekeeping requirements, and Mr. Rendelman's motion meets them. That should end the matter.

This Court's cases confirm that on a motion for authorization the Court does not pre-judge the factual merits of a claim, much less assess whether an error satisfies *Brecht*'s fact-intensive prejudice standard. The Court first addressed the issue in *In re Williams*, 330 F.3d 277 (4th Cir. 2003), where it considered the meaning of the statutory phrase "prima facie showing," 28 U.S.C. § 2244(b)(3)(C). This Court – in line with "every court to decide the question" – held that a "prima facie showing" is

> simply a sufficient showing of possible merit to warrant a fuller exploration by the district court. . . . If in light of the documents submitted with the [motion] it appears reasonably likely that the [motion] satisfies the stringent requirements for the filing of a second or successive petition, we shall grant the [motion].

*Williams*, 330 F.3d at 281 (alterations in original) (quoting *Bennett v. United States*, 119 F.3d 468, 469-70 (7th Cir. 1997)). To address the concern that the definition "seems to require review of the merits during the pre-filing authorization stage," the Court added "[o]ne clarification." *Id*. "[T]he 'showing of possible merit' alluded to . . . relates to the possibility that the claims in a successive application will satisfy 'the stringent requirements for the filing of a second or successive petition,' . . . not

the possibility that the claims will ultimately warrant a decision in favor of the applicant." *Id.* at 282 (quoting *Bennett*, 119 F.3d at 469-70).

Following *Williams*, this Court time and again has reiterated that in analyzing an authorization motion it "need not decide whether [the applicant] will ultimately prevail on his claim, only whether he is entitled to pursue a successive claim." *In re Hubbard*, 825 F.3d 225, 229 (4th Cir. 2016). That is, the Court "focus[es] only on whether [the movant] is reasonably likely to satisfy the § 2255(h) standard," not on whether his claim is "plausible" as a matter of fact. *In re Graham*, 61 F.4th 433, 442 & n.4 (4th Cir. 2023); *see United States v. Winston*, 850 F.3d 677, 681-82 & n.4 (4th Cir. 2017) (rejecting the government's procedural argument in opposition to an authorization motion as in reality being a "substantive argument" that "even after receiving the benefit of [the new rule], the defendant still is not entitled to relief"); *In re Crandell*, 725 F. App'x 237, 238 (4th Cir. 2018) (per curiam) (granting authorization to file a second or successive motion under 28 U.S.C. § 2255 and directing the government to raise its merits arguments "before the district court for consideration in the first instance").

Mr. Rendelman's opening brief set forth the correct standard of review for an authorization motion. *See* Rendelman Br. 10, 15-16 (discussing *Hubbard* and *Graham*). But the government simply ignores that standard and tries to mint a new test. This Court should reject the government's attempt to add *Brecht*'s prejudice

6

analysis to the gatekeeping requirements as contrary to this Court's precedents and the statutory text.

Doing so comports with the law in other Circuits. As the Tenth Circuit has explained, Congress encouraged courts of appeals to decide authorization motions quickly – within 30 days after the filing of the motion. *See Ochoa v. Sirmons*, 485 F.3d 538, 539 & n.1 (10th Cir. 2007) (per curiam) (citing 28 U.S.C. § 2244(b)(3)(D)). To facilitate an expeditious review, the statutory "parameters indicate a streamlined procedure with a narrow focus on a fixed set of pre-specified and easily assessed criteria, which would be disrupted by engaging the manifold merits issues raised by potentially complex, fact-bound constitutional claims." *Id.* at 542-44. Courts consistently reject attempts by the government to "effectively turn the gatekeeping analysis into a merits determination, which defeats the purpose of the jurisdictional review." *United States v. Peppers*, 899 F.3d 211, 222-23 (3d Cir. 2018); *see Ochoa*, 485 F.3d at 544 (stressing that the gatekeeping requirements "for the pursuit of claims resting on new rules of constitutional law do not involve the appellate court in any preliminary assessment of the merit of the claims for which second or successive authorization is sought"); *In re Williams*, 759 F.3d 66, 70 (D.C. Cir. 2014) (rejecting the government's arguments as "go[ing] to the merits of the [authorization] motion, asking [the court] in effect to make a final determination of whether [the new rule of law] will prevail for [the movant]").

To be sure, a "cursory glance" at the merits "may" be appropriate when assessing whether a new-rule-of-law claim should go forward, but this Court has cautioned that the "'focus of the inquiry must always remain on' the authorizing standards in §§ 2244(b)(2) and 2255(h)." *In re Thomas*, 988 F.3d 783, 790 (4th Cir. 2021) (quoting *Hubbard*, 825 F.3d at 231). The purpose of glancing at the merits is to ensure that a claim is not "plainly barred as a matter of law." *In re Vassell*, 751 F.3d 267, 271-72 (4th Cir. 2014); *accord Thomas*, 988 F.3d at 790-91. Contrary to the government's contention (at 3, 16-17), this does not entail assessing the strength of a claim or resolving disputed questions of fact. *See supra* p. 6; *Hubbard*, 825 F.3d at 231-32 (granting movant authorization to file a claim based on a new rule that the government argued did not "extend[] to [his] case" because that question was "for the district court to determine"); *Vassell*, 751 F.3d at 271-72 (denying authorization motion as time-barred where application of the statute of limitations was a "narrow legal issue" that did not "depend[] on a disputed issue of fact").

*Hubbard* illustrates that line. The movant in that case sought to bring two claims relying on the new rule the Supreme Court stated in *Johnson v. United States*, 576 U.S. 591 (2015). *See Hubbard*, 825 F.3d at 229-30. *Johnson* invalidated one of two definitions of a "violent felony" under the Armed Career Criminal Act ("ACCA") – the so-called "residual clause" – as unconstitutionally vague. *Johnson*,

576 U.S. at 593-94, 597-98. This Court held that Hubbard's first claim, which argued that his armed bank robbery was not a "violent felony" after *Johnson*, was barred as a matter of law because the Court had squarely held in another case that armed bank robbery is a "violent felony" under the clause that *Johnson* did not invalidate (the so-called "force clause"). *See Hubbard*, 825 F.3d at 229 (citing *United States v. McNeal*, 818 F.3d 141, 151-57 (4th Cir. 2016)). By contrast, the Court greenlighted Hubbard's second claim, which sought to apply *Johnson* to a residual clause in the U.S. Sentencing Guidelines that was "distinct but similar" to the ACCA's residual clause. *Id.* at 230-31. The Court permitted that claim to go forward because it presented an open legal question that the Court could not resolve "at a glance" and therefore would be decided by the district court following "more detailed briefing." *Id.* at 231-34.

*In re Irby*, 858 F.3d 231 (4th Cir. 2017), cited by the government (at 14, 17), merely applied *Hubbard* to prevent a movant from asserting a claim that was a nonstarter under the law. *See Irby*, 858 F.3d at 234-37. Irby's claim, like the claim the Court foreclosed in *Hubbard*, did not actually depend on *Johnson*'s new rule because binding precedent made "pellucid" that the ACCA predicate Irby challenged qualified as a "violent felony" under the force clause, meaning that Irby could not take advantage of *Johnson*'s invalidation of the residual clause. *Id.* at 236-37. Mr. Rendelman's *Counterman* claim is nothing like Irby's and Hubbard's legally-

9

doomed claims. Here, unlike in those cases, the government does not dispute that *Counterman* applies to Mr. Rendelman's case, instead conceding (at 18) that it does and "there was instructional error." The government disputes (at 3) only whether the correct instruction would have made a difference "based on the facts of [Mr. Rendelman's] case." That is a factual dispute for the district court to resolve in the first instance, rather than a judgment this Court can make by glancing at a clear rule of law. *See Hubbard*, 825 F.3d at 231-32 (emphasizing that, "at th[e] [authorization] stage, a merits argument faces an almost insurmountable hurdle").

In arguing otherwise, the government misplaces reliance (at 17) on *In re Stewart*, 78 F.4th 690 (4th Cir. 2023). That case dealt with the authorization of an actual innocence claim based on newly discovered evidence, not the authorization of a new-rule-of-law claim. That is a critical distinction because Congress built a harmless error analysis into the gatekeeping test for an actual innocence claim. *See id.* at 698 ("for a successive § 2254 petition based on newly discovered evidence, one of th[e] stringent requirements [for the filing of a second or successive petition] is that the evidence, when viewed together with all the other evidence, must be sufficient to establish by clear and convincing evidence that 'no reasonable factfinder would have found the applicant guilty of the underlying offense'") (quoting 28 U.S.C. § 2244(b)(2)(B)); *see also* 28 U.S.C. § 2255(h)(1) (same for successive § 2255 petition).

Congress could have also made a harmless error analysis part of the gatekeeping test for a new-rule-of-law claim. But it did not. This Court "must give effect to Congress' choice" by rejecting the government's attempt to tack on a requirement that Congress did not state. *University of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 354 (2013); *Russello v. United States*, 464 U.S. 16, 23 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (brackets omitted); *Ochoa*, 485 F.3d at 542-43 (contrasting the "fixed set of pre-specified and easily assessed criteria" to authorize a new-rule-of-law claim with the "more in-depth, evidentiary inquiry for the authorization of an innocence claim").

## II. Glancing At The Merits Confirms That Mr. Rendelman's Authorization Motion Should Be Granted

As set forth above, the government concedes (at 19) that Mr. Rendelman did not get the benefit of the jury instructions that he was "entitled to" under *Counterman*. That concession confirms that Mr. Rendelman has met his threshold burden under the gatekeeping test. *See Hubbard*, 825 F.3d at 232 (the movant's satisfaction of his "threshold burden" under the gatekeeping test was "confirmed by" the Court's "glance" at the legal merit of his claim); *Thomas*, 988 F.3d at 790, 792 (stating that the movant had a "plausible claim for relief that warrants further

exploration by the district court" following a "cursory glance" at competing legal arguments). The merits inquiry stops there.

Even if the Court were to take a glance at the government's factual arguments, their weaknesses confirm that Mr. Rendelman's claim "warrants further exploration by the district court." *See Thomas*, 988 F.3d at 792. The government posits (at 19-22) that the faulty instruction had "no effect" on the outcome of Mr. Rendelman's trial. But the government reaches that conclusion by looking solely at its own evidence in the light most favorable to it. The government ignores that Mr. Rendelman was unable to present, and the jury was unable to consider, his defense that he wrote to individuals familiar with his history of serially writing letters not "threatening anything real" as a form of "protest" against the system that convicted and jailed him. *See* Rendelman Br. 4-7 (cataloguing the district court's rejection of Mr. Rendelman's multiple attempts to present this defense, Mr. Rendelman's decision not to take the stand in light of the court's rulings, and the government's repeated statements to the jury that what was in Mr. Rendelman's head was irrelevant).

The government's attempts to paper over the instructional error are misguided. The government points (at 19) to the testimony of a recipient of Mr. Rendelman's letters that she interpreted his letters as threats. But that testimony is beside the point. The crux of Mr. Rendelman's claim is that the government

12

should have the burden to prove that he had a subjective intent to threaten. Evidence that a recipient found the letters threatening might help to show that they were objectively threatening, but cannot show that a properly instructed juror would not have had a reasonable doubt about Mr. Rendelman's subjective intent. Unable to find support for its position in the trial testimony, the government resorts to arguing (at 20-22) that "the threats in the letters speak for themselves." That is not the law. *Counterman* would mean nothing if the government could point to the mere fact of a threatening statement to satisfy its burden to prove the speaker's "culpable mental state." *See* 600 U.S. at 75 (acknowledging that requiring the government to prove a subjective threat "will shield some otherwise proscribable (here, threatening) speech because the [government] cannot prove what the defendant thought").

The district court should assess whether the instructional error had a substantial and injurious effect on Mr. Rendelman's trial in light of the government's failure of proof and the district court's preclusion of Mr. Rendelman's defense.

## CONCLUSION

The Court should grant Mr. Rendelman's authorization motion.

June 17, 2024

Respectfully submitted,

*/s/ Caroline A. Schechinger*
Caroline A. Schechinger
KELLOGG, HANSEN, TODD,
  FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
cschechinger@kellogghansen.com

*Appointed Counsel for Scott L. Rendelman*

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 23-257    Caption: In re Scott Lewis Rendelman

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

> **Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

> **Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).

> **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[✔] this brief or other document contains __3,155__ [*state number of*] words

[ ] this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

[✔] this brief or other document has been prepared in a proportionally spaced typeface using Microsoft Word, 2016 [*identify word processing program*] in 14-point, Times New Roman [*identify font size and type style*]; **or**

[ ] this brief or other document has been prepared in a monospaced typeface using _____ [*identify word processing program*] in _____ [*identify font size and type style*].

(s) Caroline A. Schechinger

Party Name Scott L. Rendelman

Dated: June 17, 2024

**CERTIFICATE OF SERVICE**

I hereby certify that, on June 17, 2024, I electronically filed the foregoing Reply Brief with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

*/s/ Caroline A. Schechinger*
Caroline A. Schechinger